[Cite as *Cox v. Dayton Public Schools Bd. of Edn.*, 2018-Ohio-2656.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| GEORGIA B. COX | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27613 |
| | : | |
| v. | : | Trial Court No. 14-CV-1422 |
| | : | |
| DAYTON PUBLIC SCHOOLS | : | (Civil Appeal from |
| BOARD OF EDUCATION | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 6th day of July, 2018.

. . . . . . . . . . .

GEORGIA B. COX, 4191 Mapleleaf Drive, Dayton, Ohio 45416
    Plaintiff-Appellee, Pro se

BEVERLY MEYER, Atty. Reg. No. 0063807, 312 Patterson Boulevard, Suite 200, Dayton, Ohio 45402

and

JASON STUCKEY, Atty. Reg. No. 0091220, 312 Patterson Boulevard, Suite 200, Dayton, Ohio 45402

    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of the Dayton Public Schools Board of Education ("Board"). The Board appeals from the trial court's May 15, 2017 "Decision, Entry and Order Vacating Portion of Arbitrator's Award." We hereby reverse and vacate the trial court's decision.

{¶ 2} In *Cox v. Dayton Public Schools Bd. of Edn.*, 2d Dist. Montgomery No. 26382, 2015-Ohio-620, ¶ 4-10, this Court set forth the course of proceedings herein as follows:

This is the second appeal initiated by Cox regarding the consequences of an event that occurred on October 10, 2012 in connection with her employment as a teacher at Meadowdale High School. The first appeal, *State v. Cox,* 2014–Ohio–2201, 12 N.E.3d 446 (2d Dist.), affirmed a felony conviction for assault of a functionally impaired student. We concluded that "the evidence in the record permitted the jury reasonably to find that Cox hit the victim's upper right chest, in the area of his shoulder, and the jury could reasonably infer that she intended to cause the victim physical harm in the form of pain." *Cox* at ¶ 2.

All of the actions taken by the parties in response to the event that occurred on October 10, 2012, are governed by a collective bargaining agreement, referred to as a "Master Contract" between the teacher's union and the school board. Cox was immediately placed on paid administrative leave pending an investigation of the incident. On October 16, 2012, criminal charges were initiated against Cox in Vandalia Municipal Court. On October 16, 2012 the Director of Human Resources prepared a "Notice of

Charges and Specifications," and set it for hearing on October 30, 2012. Based on advice of counsel, Cox attempted to have the hearing continued until after the completion of the criminal case.

On November 6, 2012, Cox was notified that her paid leave status would change to unpaid leave as of November 12, 2012. The union representing Cox, the Dayton Education Association (DEA), filed a grievance over the untimeliness of the Notice of Charges, alleging that the collective bargaining agreement required the notice to be issued within 24 hours of a suspension. In response, the October 16th Notice of Charges was rescinded and reissued with a statement that the hearing would be reset "on a yet to be determined date and pending the criminal charges arising out of the same."

When the hearing was set for December 19, 2012, Cox's attorney requested a continuance, stating that Cox would not participate in the hearing until after the completion of the criminal case. In response, the Notice of Charges was again reissued with a new hearing date of January 9, 2013. On January 8, 2013, Cox again requested a continuance because the criminal charges were still pending. Notwithstanding the request for a continuance, the hearing was conducted on January 9, 2013; Cox did not appear.

Shortly before the hearing, the DEA filed two grievances, contesting the decision to convert Cox to unpaid leave and the failure to continue the hearing until after the criminal case was complete. After the hearing, Cox

was served with a Notice of Intent to Terminate. The DEA elected to submit the matter to arbitration. The arbitrator made a finding that three matters were properly before him: the two grievances filed by the DEA; and the termination of Cox's employment.

The arbitrator conducted a hearing on September 17–19, 2013. Cox appeared, represented by counsel. A representative of the DEA also participated in the hearing. The arbitrator issued a decision on December 10, 2013, finding that the District had good and just cause to terminate Cox and that the two grievances should be denied. The arbitrator's decision does not contain a certificate of service to identify the date or method of service of the decision, does not state that it is a final and binding order, and contains no statement regarding any post-arbitration remedies to seek judicial review of the decision. The parties have acknowledged that the decision was emailed to all parties on December 10, 2013. The record also contains a resolution of the Board, dated December 18, 2013, adopting the decision of the arbitrator and directing that a copy of its order be served on Cox by certified mail.

On March 10, 2014, Cox, pro se, filed her motion to vacate, modify, or correct the arbitration decision with the common pleas court. The motion did not contain a certificate of service, but at the time of filing Cox separately filed a praecipe for service of the motion to the appellee, Dayton Public Schools Board of Education. The docket reflects that the Clerk of Courts did issue service of the motion to the Board on March 10, 2014. The certified

mail receipt reflects that the Board received the motion on March 12, 2014. The Board filed a motion to dismiss, upon the grounds that Cox's motion was untimely filed and that she lacked standing to seek judicial review of the arbitrator's decision. The trial court granted the motion to dismiss, finding that the court lacked jurisdiction because Cox failed to comply with the filing requirements of R.C. 2711.13, and because only the DEA had standing to pursue a review of the arbitration decision. From the judgment dismissing her motion to vacate the arbitration award, Cox appeals, pro se.

**{¶ 3}** This Court determined in part, at ¶ 16, as follows:

The record supports that Cox complied with R.C.2711.13 by filing the motion to vacate within three months of the issuance of the arbitrator's decision. The Board asserts that compliance with the statute was not complete until it actually received a copy of the motion, which did not occur until three days after the three-month filing deadline. We find that Cox complied with Civ.R. 5 when the motion was filed timely and when the clerk of courts issued service of the motion on the day of filing. Civ.R. 5 unequivocally provides that "service" is complete upon mailing or upon delivery to the carrier. Neither Civ.R. 5, nor R.C. 2711.13 require actual delivery of the motion or receipt of the motion by the adverse party prior to the filing deadline in order for service to be complete.

**{¶ 4}** Regarding Cox's standing to pursue a judicial review of her termination, this Court concluded in part, at ¶ 20-27, as follows:

The trial court found that Cox lacked standing to pursue a motion to

vacate the arbitration decision because she was not a party to the arbitration proceeding. The court relied on Section 3.07.2(D)(1) of the Master Contract, which states that only the DEA shall have the right to appeal any grievance to arbitration. This section of the collective bargaining agreement is applicable to the two grievances that were reviewed by the arbitrator. However, different sections of the Master Contract apply to the termination. The trial court did not review or consider Article 46 or Article 48 of the Master Contract, which are directed to the procedures that must be followed for termination actions. Section 46.01.1 of the Master Contract provides in pertinent part:

> The procedures the Board must follow in terminating a contract of a Professional Staff Member are outlined in Ohio Revised Code, Section 3319.16 and Article Forty–Eight. Any employee who has received a notice of intention to terminate his/her contract by the Board shall have the right, within 10 days of the receipt of the notice, to proceed with a case under Section 3319.16, Revised Code, or to have his/her case decided by an arbitrator pursuant to Article 3.07.2D (Arbitration).

Section 46.01.2 of the Master Contract further provides that: "[a]ny Professional Staff Member who has been notified of intent to dismiss under this section must be informed of his/her right to counsel or Association assistance and representation, if desired." Article 48 of the Master Contract

establishes a "due process procedure" for the disciplinary and termination process, which includes specific notices directed to the teacher and the Association, and the opportunity to be heard at a prompt hearing.

Therefore, Articles 46 and 48 of the Master Contract specifically provide individual rights to a teacher to be notified of the intent to terminate, to attend an immediate hearing, to retain a personal attorney and to make a personal decision whether to arbitrate the termination action or whether to exercise her statutory rights instead of her contractual rights. Construing the intent of these sections of the Master Contract, *in pari materia,* with the arbitration provisions of the contract leads to the conclusion that the teacher is a party to any action involving the teacher's termination. This is consistent with the content of the arbitrator's action, which treated the termination as a separate issue from the two grievances, and allowed Cox to participate in the arbitration with counsel. The arbitrator, however, does not state whether Cox was given any personal choice over the decision whether to proceed to arbitration or to pursue a review of the termination under her statutory rights. The arbitration decision does include a statement that the choice to proceed with arbitration was made by the DEA.

R.C. 3319.16 provides a specific statutory procedure for termination of any teacher contract by a Board of Education. The statute requires the Board to furnish the teacher with a written notice of its intention to terminate the teacher's contract, and allows the teacher to demand a hearing. The statute allows the Board to refer the hearing to a referee, but makes no

reference to arbitration. After the hearing is conducted, the Board must take action to adopt or reject the recommendation for action and its order must be reflected in its minutes, and notice of the order must be served on the teacher. R.C. 3319.16 provides for judicial review of the Board's order as follows:

> Any teacher affected by an order of termination of contract may appeal to the court of common pleas of the county in which the school is located within thirty days after receipt of notice of the entry of such order. The appeal shall be an original action in the court and shall be commenced by the filing of a complaint against the Board, in which complaint the facts shall be alleged upon which the teacher relies for a reversal or modification of such order of termination of contract.

There is no question that a teacher has standing to appeal her termination to the common pleas court, if she chooses the statutory procedure rather than the arbitration procedure. No provision in the Master Contract provides that the teacher is specifically choosing to forfeit her statutory right to judicial review when she chooses to have the hearing conducted by an arbitrator instead of a member of the Board or a referee. In fact, the language of Article 46 of the Master Contract acknowledges that termination procedures are governed by both the Master Contract and R.C. 3319.16, and that the teacher has the right to choose how to proceed with

her case. This choice gives the teacher standing in the termination process.

* * * In the present case, the court erred by failing to acknowledge that Section 46.01.1 of the Master Contract does specifically give the teacher the independent right to submit her termination to arbitration.

The effect of holding that the teacher has no standing to pursue a judicial review of her termination is a waiver of her statutory rights. The U.S. Supreme Court has recognized that an arbitration clause in a collective bargaining agreement can waive the members' rights to judicial review of statutory claims if the waiver is "clear and unmistakable." *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). Ohio courts have recognized that in some cases, a party's statutory rights can differ from contractual rights she may have under a collective bargaining agreement, in which case an incident that raises multiple issues can result in having a grievance reviewed by arbitration, while the statutory claim can proceed for court review. *Haynes v. Ohio Turnpike Comm.*, 177 Ohio App.3d 1, 2008-Ohio-133, 893 N.E.2d 850, ¶ 18 (8th Dist.) *See also*, *Chenevey v. Greater Cleveland Regional Transit Auth.*, 2013-Ohio-1902, 992 N.E.2d 461, ¶ 17 (8th Dist.)[.]

The record is not clear whether Cox's waiver of her statutory rights was clear and unmistakable. Even though the Master Contract gives Cox the right to choose the statutory process or arbitration for a review of her termination, it is not clear whether she affirmatively assigned that right to her union, DEA, or made the choice to arbitrate with the knowledge that her

choice to do so would materially affect her post-hearing review rights. In addition to different filing deadlines under R.C. 3319.16 and 2711.13, the standard of review for the common pleas court to review a teacher termination under R.C. 3319.16 and the standard of review for the common pleas court to consider a motion to vacate an arbitration award pursuant to R.C. 2711.13 are materially different. R.C. 3319.16 provides that the judicial review of a teacher termination is a "special proceeding," commenced by the filing of a complaint. R.C. 3319.16 provides that the common pleas court may conduct hearings and take additional evidence, whereas the review process dictated by R.C. 2711.13 limits the common pleas court to a review of the arbitrator's decision to determine if it is "unlawful, arbitrary or capricious". *Martins Ferry City School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emps.,* 7th Dist. Belmont No.12 BE 15, 2013–Ohio–2954, ¶ 18.

Therefore, based on her statutory and contractual rights, Cox does have standing to pursue judicial review of her termination. On remand, the court must review the merits of Cox's motion to vacate, modify or correct the arbitrator's award by determining if it is contrary to law, arbitrary or capricious, which should include, but is not limited to, whether Cox's waiver of her statutory rights was clear and unmistakable. If Cox did not clearly waive her statutory rights, the court is authorized by R.C. 2711.10(D) to vacate that part of the award terminating her contract, and remand the matter to the Board for proceedings consistent with law.

**{¶ 5}** On March 27, 2015, the Board filed a motion to stay proceedings "pending disposition of Defendant's request that the Ohio Supreme Court accept jurisdiction and review" this Court's February 20, 2015 opinion. This Court granted the motion on March 30, 2015, and on August 25, 2016, the Ohio Supreme Court affirmed this Court's decision and remanded the matter to the trial court. On September 21, 2016, this Court issued an "Entry Lifting Stay and Setting Supplemental Briefing Schedule."

**{¶ 6}** On October 20, 2016, the Board filed "Defendant Board of Education's Memorandum in Opposition to Plaintiff's Motion to Vacate, Modify, or Correct Arbitration Award." On the same date, the Board filed a "Notice of Filing Exhibit," thereby giving notice "of its filing of Arbitration Board Exhibit 26 (a video of the incident involving Georgia Cox occurring on October 10, 2012) to the September 17, 18, and 19, 2013 arbitration hearing." The Board argued that "Georgia Cox clearly and unmistakenly waived her statutory rights arising under R.C. 3319.16 and 3319.161." The Board further asserted the arbitrator's award should not be vacated or altered in any way. The Board asserted that there "is no evidence of partiality or misconduct on the part of the arbitrator, and he properly executed his powers." The Board argued that the "form of the December 10, 2013 opinion and award is proper." The Board asserted that Cox's "motion to vacate the arbitrator's award is moot in relation to her pursuit of reinstatement and Grievance 12-17, and the court lacks subject matter jurisdiction over those issues."

**{¶ 7}** Finally, the Board concluded as follows:

Plaintiff has approached this Court seeking vacation or modification of a valid, final, and binding arbitration award pursuant to R.C. 2711.10 and 2711.11 without properly supported reasons. The arguments and

allegations contained in Plaintiff's Motion to Vacate reveal that it is her personal dissatisfaction with the Arbitrator's interpretation of the factual evidence before him and his application of that evidence to the provisions of the Master Contract that serves as the purported basis for her Motion. The Arbitrator's Award cannot be vacated or altered on that basis, and Plaintiff has presented no valid reason upon which the Court may revise or set aside the Arbitrator's binding determinations.

Georgia Cox clearly and unmistakably waived her right to a R.C. 3319.16 hearing and its attendant processes when she chose to submit the question of good and just cause to final and binding arbitration under the Master Contract. She cannot now argue that such submission was invalid simply because she is dissatisfied with the result. Regardless, the Ohio Department of Education has permanently revoked her teaching license and Ms. Cox has failed to further appeal that revocation, so the vacation of the Arbitrator's Award in relation to her pursuit of reinstatement of her teaching contract is moot.

{¶ 8} On November 8, 2016, Cox filed a document captioned "Filed with Leave of Court: Plaintiff's Opposition to Defendant's Memorandum in Opposition to Plaintiff's Motion to Vacate, Modify or Correct Arbitration Award." The same day, "Defendant Board of Education's Motion to Strike Plaintiff's November 8, 2016 Filing and Limit Public Access with Supporting Memorandum" was filed. The Board argued that Cox "untimely filed a memorandum opposing the Board of Education's timely-filed submission, nineteen days after the deadline established by the Court and without first seeking leave from the

Court." The Board further requested that "the Court order the removal of Plaintiff's Exhibits D1 through D7 from public view because they contain personally identifiable student information not made publicly available by the parent(s) of the students."

**{¶ 9}** On November 9, 2016 the trial court issued a "Decision, Entry and Order Sustaining Defendant's Motion to Strike," noting that Cox's November 8, 2016 document was "not filed with leave of court, nor did Ms. Cox even request the court's leave." The court concluded that "because Ms. Cox included photographs of students among the attachments, the court orders that there shall be no remote access by the public to the filing."

**{¶ 10}** On November 17, 2016, Cox filed a "Response to Judge's Decision to: Sustain Defendant's Motion to Strike Plaintiff's Motion filed after Failure to Notify Plaintiff to Vacate, Modify, or Correct Arbitration Award," attached to which was Cox's affidavit. Cox asserted that she did not receive the court's September 21, 2016 entry and that the deputy clerk refused to allow her to file a motion seeking leave to file her brief out of time.

**{¶ 11}** On January 10, 2017, the trial court issued a "Decision, Entry and Order Deferring a Final Ruling on Plaintiff's Motion to Vacate and Ordering an Evidentiary Hearing." The court found "that the arbitrator's decision should not be vacated, modified or corrected for the reasons offered by Ms. Cox in her motion under R.C. 2711.13, but it [deferred] a final decision on the motion until an evidentiary hearing can be held on the question of whether Ms. Cox clearly and unmistakably waived her rights under R.C. 3319.16."

**{¶ 12}** The trial court initially disputed this Court's February 20, 2015 decision, noting that the "only procedures established by the Master Contract for resolving disputes

between professional staff members and the Board are set forth in Article 3, captioned 'Grievance Procedure,' though Article 2 and Article 32 include provisions directed at two other types of dispute." The court noted that Article 46 "establishes merely the standard for termination of a professional staff member's employment," and Article 48 "establishes a system for progressive discipline." The court noted that "the unavoidable conclusion is that a challenge raised to the termination of a professional staff member's employment constitutes a 'grievance' as that term is defined in § 3.01." The court noted that the formal procedure for resolving a grievance consists of four levels, namely submitting a written grievance to the principal, appeal to the superintendent, mediation by mutual assent, and arbitration. The court noted that Section 3.07.02(D)(1) provides: "Only the ASSOCIATION shall have the right to appeal any grievance, as defined in Section3.01[,] to arbitration." Section 46.01.1 provides in part, "Any employee who has received a notice of intention to terminate his/her contract by the BOARD shall have the right, within ten (10) days of the receipt of notice, to either proceed with a case under Section 3319.16, Revised Code, or to have his/her case decided by an arbitrator pursuant to Article 3.07.2 D (Arbitration)," and according to the trial court, the "significance of § 46.01 is not that it invests an employee with an independent right to appeal a termination to arbitration, but that in such a case, the Association is affirmatively required to seek arbitration at the employee's request. Otherwise, the decision whether to submit a dispute is left, under § 3.07.2(D)(1), to the Association's discretion." The court concluded that this Court "for its part, seems to have ignored the restrictive clause in [§3.07.2(D)], ie., the phrase 'pursuant to.' "

{¶ 13} Regarding the merits of Cox's motion, the court noted that Cox argued that

the arbitrator's decision "reveals evident '[p]artiality on [his] part.' * * * Specifically, she faults the Board for failing to present her with notice of the charges against her within 24 hours of the incident on October 10, 2012, and for not holding a conference to 'allow[] [her] to participate in the investigation' of the charges." The court noted further that aside "from arguments directed to procedural irregularities and the Board's alleged failure to honor her rights under the Master Contract, Ms. Cox argues that the arbitrator lacked sufficient evidence to find that the Board terminated her employment for just cause." According to the court, Cox's "arguments regarding the sufficiency of the evidence, however, consist of little more than disagreements with the arbitrator's interpretation of the testimony, and in essence, she contends that the arbitrator was not impartial because he believed the testimony of the Board's witnesses, rather than her testimony." The court concluded that "the arbitrator had evidence that Ms. Cox struck the student; in the context of Ms. Cox's motion, the court may not second-guess the arbitrator's factual findings or legal conclusions."

{¶ 14} The court determined as follows:

On review of the arbitrator's decision and the transcript of the arbitration proceeding, the court finds that the decision should not be vacated, modified or corrected because Ms. Cox has not established that it was contrary to law, arbitrary or capricious, or that it was otherwise improper or unlawful. At the same time, the court defers a final decision on Ms. Cox's motion until an evidentiary hearing can be held on the other question the Second District remanded for consideration: whether Ms. Cox's waiver of her statutory rights was clear and unmistakable.

The Board provides two affidavits as evidence that Ms. Cox knowingly waived her statutory rights. * * * Both of the affiants, in nearly identical language, include averments stating that at a meeting on January 25, 2013:

1.    An attorney for the Association "explained the differences between the arbitration hearing process and the statutory hearing process" and indicated that a "court of common pleas would apply different standards of review depending on whether Ms. Cox appealed the ruling from an arbitrator or appealed from an adverse decision from a referee or the Board: and

2.    The Association's president explained that if "Ms. Cox * * * chose to proceed to arbitration, [then] the [Association] would have to approve."

* * * In Exhibit 2, the affiant is the president of the Association.   His description of the attorney's remarks is hearsay, and the court has not considered that portion of his affidavit testimony.   Similarly, the court has not considered the corresponding averments in Exhibit 3 because they are entirely hearsay.

The president of the Association also averred that, "[d]uring the January 25th meeting, [Ms.] Cox chose to appeal the proposed termination through the arbitration provisions of the Master Contract rather than pursue a statutory hearing." * * * Other than circumstantial inferences, this is the only evidence that Ms. Cox waived her rights under R.C. 3319.16.   Given that the Second District directed this court to determine whether Ms. Cox's

waiver of her statutory rights was "clear and unmistakable,' the court finds that the evidence presented on record is insufficient for this purpose.   * * * The foregoing averment nearly suffices, though it does not clarify whether Ms. Cox clearly and unmistakably relinquished her right to proceed with a case under R.C. 3319.16 on her own behalf.

{¶ 15} The court scheduled an evidentiary hearing "exclusively concerning the waiver issue" for May 11, 2017.   At the hearing, the Board called Cox to testify.   Cox testified that she has a master's degree in education as well as a Master's of Business Administration.   She stated that in the course of her employment with Dayton Public Schools she served as a "building rep" for the DEA as well as a "negotiations chairperson" as part of the executive committee at the DEA.   She stated that she served as the negotiations chairperson "towards the end of the school year of the 2011-'12.   So I went in starting the 2012-'13 school year."   Cox stated that her responsibilities in that role were to "help negotiate a contract with the administration on behalf of the membership, support the [union] president in getting a contract through."   Cox acknowledged that it "would   be fair" to say that she was very familiar with the Master Contract

{¶ 16}   Cox identified the Master Contract, and she stated that Section 46.01 has been in the series of Dayton Public Schools collective bargaining contract for many years. She acknowledged that the section offers a teacher whose termination has been recommended the option of pursuing arbitration or a case pursuant to R.C. 3319.16. Cox stated that she was presented with the option, and she stated that she did not choose to arbitrate her termination.   Cox acknowledged that she had ten days to elect to pursue an R.C. 3319.16 hearing, and if she did so, that a hearing officer or referee would be

appointed, and a decision would be issued. Cox acknowledged that she would then have the option to appeal an adverse decision to the court of common pleas. According to Cox, "[t]hat's what I was told."

{¶ 17} The following exchange occurred:

Q. * * * And you started inquiring about that before you made a decision concerning which way to go; didn't you?

A. Yes.

Q. So at the time you made a decision, you were aware of all those things we just talked about?

A. Yes.

Q. And you were also aware that you had the opportunity to go to arbitration, right?

A. This says it was either or. So yes. * * *

Q. It was a choice?

A. Yes.

{¶ 18} Cox testified she had two pending grievances "that should have been processed through arbitration." She asserted that "those grievances and the termination were two separate things. And they should have been handled differently and separately. They kept insisting that they be treated the same. I could not take my grievances through the 3319.16 procedure." Cox stated that she wanted her "termination to be handled by a separate, independent body and the grievances, which I had no choice over, I had been railroaded about * * *." Cox testified that she preferred the R.C. 3319.16 procedure relative to her termination.

**{¶ 19}** Cox identified as Exhibit B the January 23, 2013 notification she received from the Board of its intent to terminate her teaching contract and acknowledged that after she received it, she had 10 days to decide whether to pursue an R.C. 3319.16 process or arbitration. Cox testified that on January 25, 2013, she met with David Romick, the president of the Dayton Education Association, Sean Thompson, the Ohio Education Association's Labor Relations Consultant, and Susan Jansen, OEA's legal counsel, at Jansen's office, for approximately two hours to discuss the termination notice. At the meeting, Cox stated that Jansen gave her "materials to read, because I was asking questions to help me make my decision" between arbitration and the statutory process. Cox denied that she indicated a desire to go to arbitration at the meeting.

**{¶ 20}** Cox testified that after that meeting, she attended the DEA's executive board meeting, where she "asked for arbitration for my grievances, not for my termination." Cox identified Exhibit C as a copy of a letter she received on or about January 29, 2013, that notified Lori Ward, who was then superintendent of DPS, of the DEA's intent to submit her termination to arbitration under the Master Contract. Cox stated that she did not contest the DEA's intent to the Board in writing, "but I communicated with the union." Cox testified that she advised the union that "[t]his was not what I was agreeing to when I went to the * * * meeting. My grievances were supposed to have been processed first. I had ten days to make a decision, * * * but the actions regarding my termination were to be subsequent to the hearing of my grievances. And the arbitration that I was interested in was regarding my grievances and not my termination." Cox acknowledged that on January 29, 2013, she was still within the 10-day period to file a written demand for a hearing pursuant to R.C.3319.16. The following

exchange occurred:

Q. And despite what you're characterizing as your disagreement with this decision, as you sit here today, you didn't send anything to the Board saying, stop, wait, I don't want arbitration; did you?

A. I did not.

{¶ 21} The Board next called David Romick to testify. Romick stated that he has been the president of the DEA since July 1, 2010. When asked to characterize his familiarity with the Master Contract, Romick replied, "I pretty much know it in my sleep." He identified, as Exhibit A, the copy of the Master Contract that was in effect June 7, 2012 through June 6, 2013. When asked about Section 46.01 of the contract, Romick testified that "in a termination situation, where the Board has elected to terminate a professional staff member, it allows that professional staff member choice in how they want to pursue appealing that termination." He stated that the teacher can choose between "the statutory process contained in article 3319.16 of [the] Ohio Revised Code or the association's arbitration process." Romick testified that once "the member received notification of the termination from the Board, there is a ten-day window, in which we work with the member * * * to make whatever decision is appropriate."

{¶ 22} Romick testified that if a teacher chooses the R.C. 3319.16 process, "the association would pretty much turn over the case (sic) to the OEA plan attorney who is representing that particular professional staff member, in addition to all evidence, documentation, et cetera * * * and assist that OEA plan attorney as necessary, during that process." If the teacher chooses arbitration, Romick testified that "it becomes incumbent upon the president to get approval from the DEA executive board for that arbitration. We

call that taking a termination to arbitration." He stated that "approval is necessary, because there is a financial cost to the association * * * in sharing the cost for that arbitration, and any financial costs expended by the association must be approved by our executive board."

{¶ 23} Romick testified that Cox chose arbitration. He stated that he received a copy of Exhibit B, and that "the receipt of the letter would start that clock on the ten-day timeline present in the master agreement." According to Romick, upon receipt of the letter, he and "our labor relations consultant at the time, Sean Thompson * * * communicated with Ms. Cox, in terms of getting her into the office with our OEA plan attorney, so that we could discuss the options at that point and make a decision within that ten-day timeline." Romick stated that he met with Cox on January 25, 2013, consistent with Cox's testimony. He testified that the purpose of the meeting was to provide Cox with information "on both options for dealing with this notice of termination and to come out of that meeting with a decision about how to proceed, because given whatever choice is made dictates the union's role and what actions need to be taken next." Romick testified that he explained to Cox, if she chose arbitration, "what the association's next steps would be; how that worked; why the issue had to be taken to the executive board for approval, given then financial consideration, and then what would occur from there." When asked if Cox made statements about the arbitration process, Romick stated that "there was a statement made to the effect of since she was an active member of the executive board, she felt confident the executive board would approve this intent to terminate for arbitration, and we could move forward." Romick stated that Cox "chose to go through the arbitration route."

**{¶ 24}** Romick stated that "my course of action, once arbitration is decided, is to call a meeting of our executive committee to get this on the agenda, so that it can be approved to arbitration." According to Romick, Cox subsequently advised him that she wished to address the executive committee regarding the arbitration. He stated that Cox appeared at the January 29, 2013 executive board meeting. Romick testified that Cox "addressed the executive board in terms of * * * their eventual vote to take this to arbitration. She was advocating for herself, which is appropriate. We set aside some time during that meeting, so that that could occur." Romick stated that the executive board approved Cox's request and committed to arbitrating her termination grievance.

**{¶ 25}** Romick identified Exhibit C and testified that Sean Thompson immediately sent the January 29, 2013 letter to Lori Ward "advising her that we intended to arbitrate this issue." When asked if Cox elected anything other than arbitration within the ten-day period, Romick responded negatively. Romick testified that arbitration occurred in the fall of 2013, and that "the Board's intent to terminate was upheld in that arbitration."

**{¶ 26}** Sean Thompson testified that he is employed by the Ohio Education Association, which is "the teacher's union, one of the teacher's unions in Ohio that represent over 120,000 teachers and educational support staff throughout the state." Thompson stated that he is the labor relations consultant, and that he was familiar with Cox's termination process. He identified Exhibit B as "the written notice to Ms. Cox that the Board of Education is considering the termination of her continuing contract." Thompson stated that he attended the January 25, 2013 meeting with Cox that was scheduled upon receipt of Exhibit B. Consistent with Romick's testimony, Thompson testified that the purpose of the meeting "was to explain to Ms. Cox the option that the

master agreement provided her, whether to pursue contesting her termination through the statute or through arbitration." According to Thompson, in the R.C. 3319.16 process, "a referee * * * is assigned to the case, holds a hearing where the teacher would present their side, the Board would present their side. * * * [T]he referee then gives a ruling, which is submitted to the Board of Education, and the Board of Education can either accept or deny that and act however the[y] decide in the end." Thompson stated that the Board can reject any decision by the referee not to terminate a teacher.

{¶ 27} Thompson testified as follows regarding the arbitration process:

[If] they elect to contest the termination via an arbitration, [we] notify the Board, and then we submit to the American Arbitration Association for a list of potential arbitrators. And then I would contact, representing the Dayton teachers, the Board attorney to review the list and do what we call a strike, where we determine which arbitrators on the list that * * * we would like to use. Then we would contract the arbitrator, ask for dates, hold the arbitration, and then [the] arbitrator would give his ruling. In Dayton, the arbitration is binding.

{¶ 28} Thompson stated that binding means "it's the final say. It is the decision. The Board cannot act in any other manner." Thompson stated that the arbitration process was explained to Cox on January 25, 2013. Thompson stated that Cox's "choice was to pursue arbitration. * * * I heard her say, I would like to pursue arbitration over the statute." Thompson stated that the executive committee of the DEA met to approve arbitration on or around January 29, 2013. Consistent with Romick, Thompson stated that Cox attended the meeting to "advocate for her position to move her termination to

arbitration," and that the executive board approved her request. He stated that he notified the superintendent as reflected in Exhibit C. Thompson stated that he would have sent a different letter to Lori Ward if Cox elected the statutory process. Thompson testified that arbitration of Cox's termination occurred in mid-September 2013, and that he was present. Thompson stated that he met with Cox multiple times ahead of the arbitration to prepare her. When asked if Cox, during those multiple meetings, ever indicated that she did not want to arbitrate her termination, Thompson responded negatively.

{¶ 29} On cross-examination by Cox, Thompson testified that he does not "know that there are any barriers in the contract" that would have kept her from contacting the Board in reference to Exhibit C. Thompson stated that Cox emailed him on March 6, 2013 that "she would like an arbitration of the grievances, two grievances dated 12/16 and 12/17 arbitrated first, * * * followed by the arbitration for the wrongful termination." On re-direct examination, Thompson stated that March 6, 2013 is past the ten day deadline in the Master Contract. At the conclusion of Thompson's testimony, Exhibits A, B, and C were admitted without objection.

{¶ 30} The following exchange occurred in the course of Cox's testimony:

Long and short, it is an unconscionable deal. I - - in the long meeting that we had, some of the questions that I asked, well, what were the terms? What were * * * the details for the arbitration? They would not be given. * * *

So I knew that it would be contrary to law. I also knew that if push came to shove, at worst-case scenario, they were still trying to punish me

for something, justify something, that they had rescinded. And this whole cycle just did not make sense.

So there was no point fighting. I was looking forward to facing the arbitration to deal with those grievances, but when it came to that date, then we tried to postpone it. We even tried to postpone it to - - as - - as further proof that my intent was to deal with grievances, because that's what was on the books. My only alternative for dealing with grievances was arbitration. It did not have to be for my termination.

But I could see that that's where the people I had to work with were leaning. So [I] went with it, knowing that I could come back. I had a way outside of the Board. The law allowed me to come to the common pleas court and appeal the decision. So I opted for that. I didn't opt for it. I just went along with it, and played along, because I really had no other option.

In fact, in trying to - - to - - I saw where the cost - - cost became a concern, what it was going to cost, to the point where you, Ms. Meyer, offered to pay me - -

MS. MEYER: Objection, Your Honor.

MS. COX: - - $500 - - $5,000 - -

THE COURT: I'll overrule it. Go ahead. Tell us - - tell us what was - -

MS. COX: She made an offer that I not go to arbitration and accept a payment of $5,000 because that's what it was going to cost. I rejected that.

THE COURT: Okay. Is there anything else you want to say on this issue of whether or not you waived your right to the - -

MS. COX: I - - yeah.

THE COURT: - - statutory process?

MS. COX: It is clear I did not waive my right.

THE COURT: Okay.

MS. COX: I was pushed into it, and I could see that that was the only way either my grievances were going to be heard or anything else was going to be heard.

THE COURT: All right. And as I understand it, and then I'll have Ms. Meyer's ask questions if she wishes, you thought if you got the two grievances arbitrated that would make the termination go away?

MS. COX: Yes.

THE COURT: Is that the sum and substance - -

MS. COX: Yes.

THE COURT: - - of what you said?

MS. COX: Yes.

THE COURT: Okay. And you went along with arbitration because you had out [sic]. You thought you had an out?

MS. COX: Well, yeah, but - - but the main thing was my arbitration. And even the - - the grievances - - but even if they had - - when I came to realize they put the termination on there is all three [sic], I realized that I could come to - - it could have been - - the decision would have - -

THE COURT:   And that's the - - that's the out that you were - -

MS. COX: Yes.

THE COURT:   - - talking?   Okay.

MS. COX:   Because the facts just clearly presented me with an out.

THE COURT:   All right.   You may examine.

MS. MEYER: I have no questions.

**{¶ 31}** Cox's Exhibits 1 and 2, copies of email exchanges, were admitted over objection.

**{¶ 32}**   In its "Decision, Entry and Order Vacating Portion of Arbitrator's Award," the trial court determined as follows:

The Board's two witnesses, David Romick – president of the DEA – and Sean Thompson – an OEA labor relations consultant assigned to the DEA – testified consistently that once Cox was notified of the Board's intention to terminate her, a meeting was commenced January 25, 2013, with Cox, Romick, Thompson and Susan Jansen, the OEA plan attorney.

The purpose of the meeting was to determine whether to utilize arbitration or the R.C. 3319.16 statutory procedure to contest the Board's intended action.   Both procedures were discussed and Cox chose arbitration.   Thompson sent a letter dated January 29 to the school superintendent, Lori Ward, stating that the DEA intended to submit the "decision" (to terminate) to arbitration.   Def. Ex. C.   Cox was copied on the letter but did not respond that she didn't want arbitration.   Thompson met with Cox several times to prepare for the arbitration of the termination and

Cox never said she didn't want arbitration.

Cox gave a conflicting account. She testified that she didn't want her termination arbitrated although she did eventually agree to arbitration of her termination. She testified that she did have two grievances that she wanted arbitrated and that she wanted these grievances arbitrated before her termination was arbitrated.

Although there is no documentary evidence to support Cox's claim that she did not want her termination arbitrated, she claimed she so informed the DEA. She said she ultimately decided to go along with arbitration of her termination because she couldn't alter the intention of the DEA to take her termination to arbitration and because she could utilize the R.C. 3319.16 process if the arbitration didn't go well, (which it didn't).

The Board argues that the evidence establishes that Cox agreed to arbitrate her termination, despite Cox's assertion that she didn't want her termination arbitrated.

Although the Board presented compelling evidence that Cox chose arbitration, the ultimate factual question before the Court is not whether Cox chose arbitration, but, rather, whether Cox clearly and unmistakably waived her statutory right to proceed under R.C. 3391.16.

The court of appeals made clear that the choice to have a termination arbitrated does not, without more, work a forfeiture of the statutory right to judicial review. [*Cox v. Dayton Public Schools Bd. of Edn.,* 2d Dist. Montgomery No. 26382, 2015-Ohio-620, at] ¶ 23. The court observed that

arbitration review and court review are not necessarily inconsistent. *Id.* ¶ 25.

Upon consideration of all the evidence, the court is not persuaded that there was a clear and unmistakable waiver by Cox of her right to invoke R.C. 3391.16 (Plaintiff's Exhibit 1 and 2 were not considered in arriving at this determination).

Accordingly, pursuant to the remand of the Court of Appeals, *Id.* ¶ 27, the award of the arbitrator, to the extent that it terminated Cox's contract, is vacated, and the matter is remanded to the Board "for proceedings consistent with law." *Id.* ¶ 27. This court infers that the court of appeals expects the Board to afford Cox statutory review under R.C. 3391.16.

{¶ 33} The Board asserts three assignment of error herein. For ease of analysis, we will first consider Cox's second assignment of error. It is as follows:

THE TRIAL COURT ERRED IN DETERMINING THAT GEORGIA COX DID NOT CLEARLY AND UNMISTAKABLY WAIVE HER STATUTORY RIGHT TO PROCEED UNDER R.C. 3319.16.

1. Ms. Cox clearly and unmistakably waived her right to proceed under R.C. 3319.16 when she did not submit a written demand for a hearing to the board within 10 days.

2. The evidence in the record demonstrates that Georgia Cox clearly and unmistakably waived her right to a R.C. 3319.16 hearing.

{¶ 34} The Board initially notes that as "a result of Ms. Cox's felony conviction and actions toward a student, the Ohio Department of Education * * * recommended to the

Ohio State Board of Education * * * that Ms. Cox's teaching license be revoked." According to the Board, on March 10, 2015, the Ohio Department of Education "permanently revoked Ms. Cox's license and will not allow Ms. Cox to apply for a teaching license again in Ohio. * * * Ms. Cox appealed the [Ohio Board of Education's] decision to the Montgomery County Court of Common Pleas, where the trial court upheld the * * * decision."

{¶ 35} In its second assignment of error, the Board argues that the "trial court erred in holding that Ms. Cox did not clearly and unmistakably waive her rights to a R.C. 3319.16 hearing" because she waived her right when she "did not demand a hearing in writing within 10 days of the [Board's] notice of intent to consider termination," as required by R.C. 3319.16, and because "the trial court ignored ample evidence in the record which pointed to Ms. Cox's waiver of a R.C. 3319.16 hearing." The Board argues that the "ten-day limit cannot be extended." The Board argues that Cox received notice on January 23, 2013, and her "inaction belies the convenient protests that she made at the May 11, 2017 evidentiary hearing that she did not choose arbitration and intended to avail herself of the R.C. 3319.16 process if she needed to." According to the Board, the "only written notice received by the [Board] in regard to Ms. Cox's termination was the intent to proceed with arbitration, which was mailed to the superintendent on January 29, 2013." The Board asserts that Cox "needed to submit her demand for a hearing within ten days - - on or before approximately February 2, 2013."

{¶ 36} The Board further argues that Cox "so strongly chose to pursue arbitration that she personally appeared at the DEA executive board meeting to gain support for her desire to pursue arbitration," and that Cox did not "object to the letter sent by the DEA to

the [Board], which clearly stated that Ms. Cox was proceeding with arbitration." The Board notes that Cox "was an active participant in her arbitration proceeding and at no point did she object to the proceedings."

{¶ 37} The Board further argues that on January 25, 2013, Cox met with Thompson, Romick, and Jansen, and that at that time, "the hearing process options - - arbitration and R.C. 3319.16 - - were explained to Georgia Cox." The Board argues that Cox "was told during the meeting that a decision to arbitrate had to be taken to the executive board for approval for financial reasons." The Board argues that Cox "explained during the meeting she felt confident the executive board would support her decision to arbitrate since she was an active member of the board." The Board argues that in the meeting, Cox "responded with questions, and at the conclusion of the two-hour meeting, Georgia Cox chose to pursue arbitration." The Board argues that Cox's "assertions that she was pushed into arbitration directly conflict with her own actions in January of 2013, when at two separate meetings, she met with her plan attorney and chose to arbitrate and then met with the DEA Executive Board to advocate for arbitration of her discharge."

{¶ 38} The Board argues that Cox's receipt of her notice regarding termination of her contract "initiated the ten calendar day period pursuant to 46.01.1 - - which mimics the ten day period in R.C. 3319.16 - - to choose either arbitration under the [Master] Contract or the R.C. 3319.16 hearing process." According to the Board, on "January 29, 2013, Ms. Cox's union sent a letter to the superintendent notifying her of the intent to submit Ms. Cox's termination to arbitration," and Cox was copied on the letter. The Board notes that as of that date, three days remained "in which Ms. Cox could send her

own correspondence to the [Board] if she wished to have a R.C. 3319.16 hearing instead."

{¶ 39} The Board argues that at the arbitration "the parties entered a stipulation on the record, and in the presence of Ms. Cox, that the issue of whether good and just cause existed for Ms. Cox's termination was properly before the arbitrator and ready for his determination with no objection voiced by Ms. Cox."

{¶ 40} Cox responds that the "trial court correctly determined that Ms. Cox did not clearly and unmistakably waive her right to proceed under R.C. Section 3319.16." Cox "holds the Board lacked a grievance on which to base a *good and just* cause for seeking any discipline against her; even more so an action to terminate her continuing contract," since "the only infraction that had only been alleged against [her had] been rescinded in proper form on November 12, 2012." She argues that "the trial court's May 11, 2017 Evidentiary Hearing ruling does not at all conflict with the Appellate Court's February 20, 2015 Opinion." Cox asserts that the Board "raised the issue about Ms. Cox's licensure. It is irrelevant to the responsibility given to the trial court." Cox asserts that the evidence against her in her criminal case "did not support the verdict," and that "[t]his case at bar, substantiates what her claim."

{¶ 41} In reply, the Board argues that the "record shows that Ms. Cox waived her statutory right to proceed under R.C. 3319.16." According to the Board, "Ms. Cox's failure to submit a timely written demand for a[n] R.C. 3319.16 hearing constitutes a waiver of her statutory rights to proceed under R.C. 3319.16." The Board asserts that the "trial court erred in holding that Ms. Cox needed to specifically negate her pursuit of a[n] R.C. 3319.16 hearing." Finally, the Board argues that "Ms. Cox is limited to the issues she raised before the trial court," and that her "termination was correctly before the

arbitrator." The Board "requests that this [C]ourt reverse the trial court's decision vacating a portion of the arbitrator's award and uphold the December 10, 2013 arbitration award in its entirety without any further proceedings." The Board asserts that Cox's "inability to obtain a teaching license is central and dispositive in this case."

**{¶ 42}** As noted above, this Court determined that even "though the Master Contract gives Cox that right to choose the statutory process or arbitration," it was "not clear whether she affirmatively assigned that right to her union, DEA, or made the choice to arbitrate with the knowledge that her choice to do so would materially affect her post-hearing review rights." *Cox,* 2d Dist. Montgomery No. 26382, 2015-Ohio-620, at ¶ 26. We agree with the Board that the waiver of Cox's statutory rights was clear and unmistakable, and that the trial court erred in vacating the termination of Cox's contract. As this Court noted, the Master Contract allows a teacher faced with termination "to make a personal decision whether to arbitrate the termination action or whether to exercise her statutory rights instead of her contractual rights." *Id.* at ¶ 21. Section 46.01.1 of the Master Contract provides in part, "Any employee who has received a notice of intention to terminate his/her contract by the BOARD *shall have the right*, within ten (10) days of the receipt of the notice, to *either* proceed with a case under Section 3319.16, Revised Code, *or* to have his/her case decided by an arbitrator pursuant to Article 3.07.2D (Arbitration)." R.C. 33.19.16 provides in part: "Within ten days after receipt of the notice from the treasurer of the board, the teacher may file with the treasurer a written demand for a hearing before the board or before a referee, and the board shall set a time for the hearing which shall be within thirty days from the date of receipt of the written demand." The January 23, 2013 notice to Cox of the Board's intent to consider the termination of her

contract provides in part: "You are further advised that you may, within ten days after receipt of this notice, demand a hearing before the Board of Education or a referee. Section § 3319.16 and § 3319.161 of the Ohio Revised Code set forth the rights granted to you in such a hearing."

{¶ 43} Cox, who is very well-educated, and who was involved in contract negotiations in the course of her employment at Meadowdale, testified she was very familiar with the Master Contract, and that Section 46.01 thereof has been in a series of previous Master Contracts. Pursuant to Section 46.01, and R.C. 3319.16, a hearing is triggered by a teacher's written demand, and Cox acknowledged that she had ten days, after receiving the notice of an intent to terminate her employment, to file a written demand for a hearing before the board or before a referee, pursuant to R.C. 3319.16. She further acknowledged her understanding of her right to appeal her termination to the court of common pleas. Cox further acknowledged that the Master Contract "says it was *either* [the R.C. 3319.16 process] *or*" arbitration, and the trial court determined that the Board presented "compelling evidence that Cox chose arbitration." That the DEA appealed Cox's grievances to arbitration did not preclude Cox from filing an R.C. 3319.16 written demand for a hearing on the issue of her termination, at which time the Board "*shall*" schedule the hearing. In her testimony, Cox does not explain her failure to file an R.C. 3319.16 demand letter. In the absence of a demand letter, Cox's assertion that she "was pushed into" arbitration lacks merit. Since Cox failed to affirmatively request an R.C. 3319.16 proceeding, we conclude that her waiver of her statutory rights is clear and unmistakable. Accordingly, the Board's second assignment of error is sustained.

{¶ 44} The Board's remaining assignments of error are as follows:

THE TRIAL COURT ERRED IN VACATING A PORTION OF THE

ARBITRATOR'S AWARD.

THE TRIAL COURT ERRED IN ITS INTERPRETATION AND

APPLICATION OF THE FEBRUARY 20, 2015 OPINION OF THE SECOND

APPELLATE DISTRICT.

**{¶ 45}** Based upon our resolution of the Board's second assignment of error,

further analysis of the Board's remaining assignments of error is moot.

**{¶ 46}** The judgment of the trial court vacating the award of the arbitrator, to the

extent that it terminated Cox's contract, is reversed and vacated.


WELBAUM, P.J., concurring:

**{¶ 47}** While I agree with the majority opinion, I write this concurrence to briefly

express my opinion that this case is moot as well as barred by Cox's failure to timely

pursue her statutory right to an appeal. The concept is well established that courts

should not decide moot cases. *See, e.g.*, *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-

2597, 13 N.E.3d 1146, ¶ 37. Cases become moot when courts cannot possibly grant

meaningful relief, even if they were to rule in favor of the party seeking relief. (Citation

omitted.) *Gold Key Realty v. Collins*, 2d Dist. Greene No. 2013-CA-57, 2014-Ohio-4705,

¶ 23. My opinion that this case is both moot and barred by Cox's failure to pursue her

statutory appeal is based on the following points.

**{¶ 48}** First, the issue of whether Cox clearly and unmistakably waived her rights

to a R.C. 3319.16 termination proceeding is moot because the Ohio State Board of

Education adopted a resolution on March 10, 2015, permanently revoking Cox's teaching

license and prohibiting her from applying for a teaching license in the future, based on a felony conviction involving a student victim. Cox filed an administrative appeal of the resolution to the Montgomery County Court of Common Pleas, which affirmed the State Board's decision on April 19, 2016. *See* Doc. #11, Montgomery C.P. No. 2015-CV-1735, Decision, Order and Entry Overruling Appellant's Administrative Appeal; Affirming Decision of the Ohio State Board of Education (Apr. 19, 2016).

**{¶ 49}** However, Cox failed to further appeal the common pleas court's decision. As a result, the prior decision is final, and future litigation challenging the validity of Cox's termination is barred by the doctrine of res judicata. *See State v. Swayne,* 4th Dist. Adams Nos. 12CA952, 12CA953, and 12CA954, 2013-Ohio-3747, ¶ 24) (where "a party fails to timely appeal a final order, matters that could have been reviewed on appeal become res judicata and cannot be reviewed in related or subsequent proceedings or appeals"). *See also Barton v. Barton*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, ¶ 23 (claims that could have been raised in a prior case are barred by res judicata). Furthermore, if we granted the relief sought by this appeal and ordered the Dayton Board of Education to conduct R.C. 3319.16 termination proceedings, the prior outcome could not be changed, since the Ohio State Board of Education has concluded that Cox cannot lawfully be employed as a teacher. Therefore, we cannot presently grant Cox meaningful relief on this issue.

**{¶ 50}** The case is also moot or barred because Cox failed to timely submit a demand for a hearing as required by R.C. 3319.16. Cox received notice of the Board's intent to terminate her teaching contract but never filed a written demand with the treasurer as required under the statute. Consequently, there was no timely demand for

a hearing. *See Mellion v. Akron City Sch. Dist. Bd. of Edn.*, 9th Dist. Summit No. 23227, 2007-Ohio-242, ¶ 10.

{¶ 51} According to Cox, the DEA (her union) misled her in a way that negates her waiver of statutory rights to proceed with a termination process under R.C. 3319.16. Whether the DEA improperly steered Cox toward arbitration under the negotiated Master Contract, or did so against her expressed wishes, is a matter of contention between Cox and the DEA, rather than the Board. Because the DEA is not a party to this case, we cannot possibly give Cox meaningful relief, even if we found her allegations to be true.

{¶ 52} I would also point out that our prior opinion in this case should not be read as requiring boards of education to ascertain the legitimacy of a party's waiver when the choice between arbitration and the statutory proceedings was decided between that party and his or her union. In *Cox v. Dayton Pub. Schools Bd. of Edn.*, 2d Dist. Montgomery No. 26382, 2015-Ohio-620, we concluded that the record was not "clear and unmistakable" with respect to whether Cox had waived her statutory rights under R.C. 3319.16. *Id.* at ¶ 27. Our opinion in *Cox* noted that:

No provision in the Master Contract provides that the teacher is specifically choosing to forfeit her statutory right to judicial review when she chooses to have the hearing conducted by an arbitrator instead of a member of the Board or a referee. In fact, the language of Article 46 of the Master Contract acknowledges that termination procedures are governed by both the Master Contract and R.C. 3319.16, and that the teacher has the right to choose how to proceed with her case. This choice gives the teacher standing in the termination process.

*Id* at ¶ 23.

{¶ 53} Because the record before us did not indicate whether Cox's wavier was clear and unmistakable, we remanded the case so that the trial court could decide the issue. As the majority opinion indicates, the trial court held hearings on remand and ultimately concluded that Cox did not waive her rights. Notably, the facts produced in these evidentiary hearings on remand, and recited by the majority opinion, reveal that the Board had no involvement in any discussion of whether Cox wished to choose arbitration or the statutory remedy. Instead the discussion occurred during a meeting between Cox and DEA members or affiliated representatives, which included the DEA president, an OEA labor relations consultant assigned to the DEA, and the OEA plan attorney. Majority Opinion at ¶ 32. The record does not indicate that the Board or its members were either present at the meeting or had any involvement with Cox's decision to arbitrate. After the meeting, the OEA labor relations consultant sent the school superintendent a notice that the DEA intended to arbitrate. *Id.*

{¶ 54} R.C. 3319.16 sets forth requirements that boards of education must follow in terminating contracts. In the initial step, a board must "furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of the teacher's contract with full specification of the grounds for such consideration. The board shall not proceed with formal action to terminate the contract until after the tenth day after receipt of the notice by the teacher." If a teacher chooses to file a notice with the treasurer within ten days after receiving the notice of intent to terminate, the board must then set a time for hearing "within thirty days from the date of receipt of the written demand, and the treasurer shall give the teacher at least twenty days' notice in writing of the time and place

of the hearing."

{¶ 55} R.C. 3319.16 provides for other things that boards must do, including allowing cross-examination of witnesses and making a record of the proceedings. However, the statute does not require the board to act on a teacher's behalf or to interact with a teacher in this situation in any way, other than giving the teacher notice of the grounds for termination and complying with procedural requirements as to notices and hearings.

{¶ 56} Implicit in the very nature of termination proceedings is that a board of education does not represent the party it is attempting to terminate. Furthermore, requiring a board to be involved in any manner beyond what is statutorily or contractually required would be contrary to normal relationships between contracting parties. *See* R.C. 3319.08(A), which requires boards to enter into written contracts for employment and reemployment of teachers. While every contract contains implied duties of good faith and fair dealing, this duty is not breached where a party seeks to enforce an agreement as written. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 5; *Third Fed. S. & L. Assn. of Cleveland v. Formanik*, 2016-Ohio-7478, 64 N.E.3d 1034, ¶ 45 (8th Dist.). In the case before us, there is no indication that either the Master Contract or R.C. 3319.16 imposed a duty on the Board to determine whether Cox's waiver was clear and unmistakable.

{¶ 57} Thus, in addition to the reasons given to reverse the trial court that are set forth in the majority opinion, I would either reverse or dismiss the appeal because the issues advocated by Cox are both moot and barred by her failure to pursue an R.C. 3319.16 appeal.

HALL, J., concurring:

**{¶ 58}** I concur in Judge Donovan's opinion and in Judge Welbaum's concurring opinion.

. . . . . . . . . . . . .

Copies mailed to:

Georgia B. Cox
Beverly Meyer
Jason Stuckey
Hon. William H. Wolff Jr., by Assignment